WAVERLEY LUMBER COMPANY *vs.* ANTONIO PIANTEDOSI
& another.

Middlesex. November 9, 1927. — February 28, 1928.

Present: BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Bond*, To dissolve attachment. *Contract*, What constitutes. *Evidence*,
Of delivery. *Surety*. *Agency*, Existence of relation. *Practice, Civil*,
New trial, Requests, rulings and instructions. *Fraud*.

Failure to file in court within the statutory period a bond given to dissolve
an attachment does not prevent its use as a common law obligation.

Sureties on a bond given to dissolve an attachment cannot complain that
such bond is used to procure a discharge of the attachment by the
creditor instead of being filed within the statutory period.

At the trial of an action against a surety upon a bond given to dissolve an
attachment, there was evidence, which was controverted, that, when
the surety, an Italian, appeared before a master in chancery, who was
also an Italian, to qualify, the master in chancery explained to the surety
the nature of the bond and the surety's obligation; and that the con-
versation was in Italian; and that an attorney for the principal on the
bond explained to the surety that the bond was to take off an attach-
ment. The surety testified that he understood all the master in
chancery told him; that he said he would "guarantee" the principals;
that he knew that if the principals did not pay "some account or other"
he would have to pay it; and that he had never heard of a bond to dis-
solve an attachment, but was familiar with bail bonds. *Held*, that

(1) Findings were justified that the surety signed the bond freely and
with full opportunity to understand what he was doing;

(2) There was no evidence of fraud or undue influence practised on
the surety, or of misrepresentations in regard to the paper he signed;

(3) In such circumstances, the surety was bound even though he did
not comprehend all the legal consequences of his act.

At the trial of the action above described, there was evidence that the
surety signed the bond after examination by the master in chancery;
that at that time the signature of one principal appeared on the bond;
that there was a discussion in the presence of the surety relative to the
bond being left with the master in chancery to secure the signature of
the other principal, and relative to the necessity of such signature to
complete the bond; that the bond was left with the master in chancery,
who, after the other principal had signed within eleven days thereafter,
delivered the bond within twenty-six days afterwards to the plaintiff's
attorney, who, on the same day, executed a discharge of the attachment
which was duly recorded; and that thereafter the plaintiff recovered a
judgment against the principals upon which nothing ever was paid.
After a verdict against the surety, it was *held*, that

(1)  By leaving the signed document with the master in chancery in
the circumstances, the surety could be found to have authorized its
delivery to the creditor, when completed by the signature of the second
principal and the certificate of the master in chancery, either as a bond
to dissolve the attachment under the statute, or as a common law bond;
 (2)  The trial judge properly refused to order a verdict for the surety.
A trial judge is not bound to instruct the jury in regard to a particular fact
 when other facts are also to be considered in reaching a conclusion.
No abuse of discretion appeared in the denial of a motion for a new trial
 on the alleged ground that an unintentional mistake of fact by the judge
 in his charge to the jury caused a failure of justice.

CONTRACT against sureties upon a bond given to dissolve
an attachment.  Writ in the Second District Court of East-
ern Middlesex dated April 10, 1926.

On removal to the Superior Court, the action was tried
before *Dubuque,* J.

There was evidence that, in an action against one Sabatino
Russo and his wife, Assunta Russo, the plaintiff made an
attachment of certain real estate; that thereafter, at Sabatino
Russo's request, the defendants appeared before a master
in chancery, as the defendant Piantedosi understood, to sign
a bond, although Russo did not tell him it was a bond to dis-
solve an attachment; that both defendants and the master
in chancery were Italians; that the master in chancery ex-
amined the defendants concerning their qualifications as
sureties; that both defendants signed the bond in suit as
sureties on April 11, 1925; and that the bond had previously
been signed by Sabatino Russo.

The master in chancery testified for the plaintiff that on
that occasion he, in Italian, told the defendants that they
were "going on a bond to dissolve an attachment in a suit
brought against" the Russos, and their obligation was to
pay a judgment recovered in that suit against the Russos if
the Russos did not pay it.   On cross-examination, the master
in chancery testified that the conversation with the sureties
might have been in English or partly in English and partly
in Italian.

An attorney for the Russos testified that on the way to
the office of the master in chancery he told the defendants
that the bond was to take off an attachment, and that he

did not otherwise explain the bond except to tell them the amount of it.

The defendant Piantedosi testified that the conversation with the master in chancery was all in English; that he (Piantedosi) said he would "guarantee" the Russos, but that the master in chancery did not explain what for; and that he had never previously heard of a bond to dissolve an attachment, but was familiar with bail bonds. On cross-examination, the defendant Piantedosi testified that he understood everything the master in chancery said; and that he knew that if the Russos did not pay "some account or other" the defendants would have to pay it.

The defendant Farese testified that he understood he was "going bond" for the Russos; and that he was going to be responsible for Mrs. Russo for something.

There also was evidence that Mrs. Russo's signature was not on the bond at the time of the examination of the sureties, and that after the sureties had signed, the bond was left with the master in chancery. The master in chancery testified that there was a discussion in the presence of the sureties with reference to the bond being left with him to secure Mrs. Russo's signature — that her signature must be obtained before he could approve and sign the bond.

There also was evidence that the master in chancery delivered the bond to Sabatino Russo with instructions to secure Mrs. Russo's signature; that before April 22, 1925, Russo returned the bond, then purporting to bear Mrs. Russo's signature, to the master in chancery; that the master in chancery approved the sureties on April 22, 1925, and, before May 18, 1925, delivered it to the plaintiff's attorney; that the plaintiff's attorney on May 18, 1925, executed a discharge of the real estate attachment, the discharge being duly recorded; that thereafter the plaintiff recovered judgment against the Russos; and that nothing was ever paid upon that judgment.

At the close of the evidence, the judge denied a motion by the defendant Piantedosi that a verdict be ordered in his favor. The defendant Piantedosi also filed the following requests for rulings:

"10. The burden of proof rests on the plaintiff to prove by the fair preponderance of the evidence, that said bond was delivered to the plaintiff with said defendant Piantedosi's knowledge and consent.

"11. There is no evidence tending to show such knowledge and consent on the part of said defendant, either express or implied.

"12. There is no evidence that said defendant ever knew or was informed that said bond was to be delivered either to the principal obligors named therein or either of them, or to the plaintiff.

"13. Said bond was not delivered either to the principal obligors named therein, or their attorney, or to the plaintiff, or its attorney, in the presence of said defendant."

The trial judge in substance gave the tenth request but refused to give the requests numbered 11–13, inclusive.

Material portions of the judge's charge to the jury are as follows: "It is for you to say as a matter of fact whether the bond was delivered. If the bond was not delivered with their express or implied consent then they are not bound on this bond, and the verdict would be for the defendant. If the delivery was made with either their express or their implied consent,— it is not claimed there was express consent. I take it there is no evidence about that, but there is evidence of the circumstances under which the bond was left there in Mr. Brogna's office. Mr. Brogna said after thinking over the matter he found that the wife was not there, Mrs. Russo was not there and that it was left there to get her signature and as soon as he got the signature he was to deliver the bond to the plaintiff's attorney. Now if it was understood by the defendants that they were signing a bond that was to become valid and effective and that things were necessary to be done for that purpose and they did not object to it, you may imply from the circumstances, you may infer from what was proved took place in Mr. Brogna's office, it is for you to say as to whether you should infer that there was an actual delivery with the knowledge and consent of the defendants in this case. . . . It is claimed by the defendant's counsel that the evidence was to the effect that Mr. Brogna

said in the presence of the defendants, the sureties, that after he got the signature of Assunta Russo to the bond that he would then approve the sureties, and it is claimed that nothing was said by him or by anybody else as to the delivery of the bond at that time.  That is what the defendant's counsel contends.  It is for you to say whether he intended the execution of the bond to be effective, or to have persons who had charge of the bond make it effective by delivery. That is a question of fact for you to decide."

The judge's charge was full and explicit on the other issues presented by the record.

The jury returned a verdict for the plaintiff in the sum of $2,618.75.

Thereafter, the defendant Piantedosi filed motions for a new trial on the grounds that the verdict was against the evidence, against the weight of the evidence, and against the law; and that a new trial was necessary to prevent a failure of justice because of an unintentional mistake of fact made by the judge in his charge to the jury.  Both motions were denied by the trial judge.

The defendant Piantedosi alleged exceptions.

*J. G. Brackett,* for the defendant Piantedosi.

No argument nor brief for the plaintiff.

WAIT, J.  The refusal to direct a verdict for the defendant Piantedosi; the failure to give the eleventh, twelfth and thirteenth requests for instructions; the instructions given; and the denial of the motion for new trial, were not erroneous.

There was evidence which would justify findings that the defendants signed the bond in question freely, and with opportunity to understand fully what they were doing.  There was no evidence of fraud or undue influence practised upon them, nor of any misrepresentation in regard to the paper they were signing.  In such circumstances they are bound, even though they did not comprehend all the legal consequences of their act.  *Atlas Shoe Co.* v. *Bloom,* 209 Mass. 563, 567.  They must be presumed to know what they have undertaken.

In principle this case is within the decision in *Sampson* v. *Barnard,* 98 Mass. 359, and *Daley* v. *Carney,* 117 Mass. 288.

It is governed by them.  In leaving the signed document, as the sureties did, with either the master in chancery or with one of the principals, they could be found to authorize its delivery when completed by the signature of the other principal debtor, either as a bond to dissolve the attachment under the statute, or as a common law bond.  The requirement that the bond be filed within a certain time after its approval to make it effective to dissolve the attachment (G. L. c. 223, § 123) does not prevent its use as a common law obligation.

The desire to dissolve the attachment, which the instrument expresses, could be gratified either by filing the completed instrument within the statutory period, or by procuring a discharge in return for its delivery to the creditor. The sureties cannot complain that the second rather than the first method was employed.  *Daley* v. *Carney, supra.* Here the creditor took the bond and gave a discharge of the attachment.  There was evidence for the jury to pass upon. In *Dole Brothers Co.* v. *Cosmopolitan Preserving Co.* 167 Mass. 481, cited by the defendant, the error arose from failing to submit the facts to the jury.  Mere lack of knowledge of delivery to the creditor was not held fatal to recovery.

The instructions requested could not properly be given. For the reasons already stated, the evidence justified inferences of authority to deliver.  The judge was not bound to instruct in regard to a particular fact when other facts were also to be considered in reaching a conclusion.  *Tonsman* v. *Greenglass*, 248 Mass. 275.

The charge, as amended, left to the jury to decide upon the evidence, whether an intent to authorize an effective delivery was made out.  The defendant was not prejudiced.

Whether or not a new trial should be granted rested in the discretion of the trial judge.  We see no abuse of discretion in the denial.  *Ryan* v. *Hickey*, 240 Mass. 46, 48.

*Exceptions overruled.*